UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINGXIA GUANGHUA CHERISHMET ACTIVATED CARBON CO., LTD., AND JILIN BRIGHT FUTURE CHEMICALS CO., LTD.<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Court No. 24-cv-00262 |

# COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. ("GHC") and Jilin Bright Future Chemicals Co., Ltd. ("Jilin Bright") (collectively, "Plaintiffs"), by and through their counsel, contest the final results of the Department of Commerce ("Commerce" or the "Department"), in the antidumping duty ("AD") administrative review of Certain Activated Carbon From The People's Republic Of China ("activated carbon from China") for the April 1, 2022 through March 31, 2023 period of review ("POR"). The contested determination was published as *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 92,893 (Dep't of Commerce Nov. 25, 2024) ("*Final Results*"), and was amended in *Certain Activated Carbon From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 104,978 (Dept' of Commerce Dec. 26, 2024).

1

In the underlying administrative proceeding, Commerce selected a surrogate country from which to draw surrogate values to use in calculating AD margins under the non-market-economy methodology. The law requires that Commerce use the best information available. Instead, Commerce relied upon data that is aberrational and obviously out of sync with prior proceedings and world data. Commerce should have discarded the aberrational data but chose to embrace it instead. As a result, and for the reasons set forth below, Commerce's final results are unsupported by substantial evidence and otherwise not in accordance with law.

## JURISDICTION

1. This action is brought pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii). This action challenges certain factual findings, legal conclusions, and determinations in the Department's Final Results in the 2022-2023 Administrative Review on Certain Activated Carbon from the People's Republic of China. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §1516a(a)(2).

2. The standard of review, as provided in 19 U.S.C. §1516a(b)(1)(B), is whether the determinations, findings, or conclusions of the Department were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## STANDING

3. Plaintiffs GHC and Jilin Bright are foreign producers and exporters of the subject merchandise, i.e., activated carbon from China.

4. Plaintiffs were parties to and participated in the underlying proceeding.

5. Plaintiffs are interested parties pursuant to 19 U.S.C. §

1516a(f)(3) and 19 U.S.C. § 1677(9)(A). Plaintiffs thus have standing to commence this action under 19 U.S.C. § 1516a(a)(2)(A), (d), 28 U.S.C. § 2631(c), and 28 U.S.C. § 1581(c).

## **TIMELINESS OF THIS ACTION**

6.   Plaintiffs initiated this action by the filing of a summons on December 23, 2024, within 30 days of publication of the *Final Results* in the Federal Register on November 25, 2024.

7.   This complaint is filed on January 20, 2025, within 30 days after the filing of the summons.

8.   This action is therefore timely filed pursuant to 19 U.S.C. §1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of this Court.

## **STATEMENT OF FACTS**

9.   Commerce published in the April 4, 2023, Federal Register a notice of opportunity to request an antidumping duty administrative review of activated carbon from the People's Republic of China ("China"), covering the period of review ("POR") of April 1, 2022, through March 31, 2023. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Rev. & Join Annual Inquiry Service List*, 88 Fed. Reg. 19,916 (Dep't of Commerce April 4, 2023). Commerce initiated the administrative review covering the POR on June 12, 2023, based on timely requests for review from certain interested parties. *Initiation of Antidumping & Countervailing Duty Admin. Rev.*, 88 Fed. Reg. 38,021 (Dep't of Commerce June 12, 2023).

10.   Commerce selected Jilin Bright and GHC as mandatory respondents and placed a list of potential surrogate countries on the record. Jilin Bright and GHC submitted comments on

surrogate country selection and later submitted pre-preliminary comments, arguing that Commerce should select Romania as the primary surrogate country because it is a significant producer of comparable material and has superior data quality, while Malaysia has unreliable and aberrational data.

11.     In the *Preliminary Results*, Commerce used Malaysia as the primary surrogate country, while relying on Turkey for labor data, and determined a $2.01 per kilogram weighted-average dumping margin for Jilin Bright, and a $1.17 per kilogram weighted-average dumping margin for GHC.

12.     In case briefs submitted to Commerce, Jilin Bright contested, among other issues, the selection of Malaysia over Romania as primary surrogate country, the SV for coal tar and sub-bituminous coal, and Commerce's revision of VAT tax and failure to correct what was an obvious clerical error. GHC also contested the selection of Malaysia over Romania and the SV for coal tar and sub-bituminous coal.

13.     In the Final Results, Commerce refused to change the primary surrogate country to Romania or to change the SV for coal tar or sub-bituminous coal, and Commerce also declined to correct the Jilin Bright VAT tax calculation and obvious clerical error.

14.     For the first time, in the Final Results, Commerce added an activated material SV (for finished activated carbon) for GHC because an unaffiliated supplier of activated carbon had purchased finished activated material which the unaffiliated supplier put into production of activated carbon in addition to the activated material that it had produced from coal. Record evidence demonstrates, however, that the unaffiliated supplier did not sell any of the activated carbon produced from purchased activated material to GHC. Record evidence demonstrates that

the unaffiliated supplier sold GHC only activated carbon that the unaffiliated supplier had produced from coal.

15. Both Jilin Bright and GHC submitted ministerial error allegations. GHC highlighted an error in which Commerce inadvertently used the wrong SV for bituminous coal.

16. Commerce agreed with GHC's ministerial error allegation and stated that it would change the margin program to use the correct SV for bituminous coal. Commerce published amended final results, in which it corrected the erroneous SV for bituminous coal for GHC, but not for Jilin Bright.

17. This appeal followed.

## STATEMENT OF CLAIMS

### Count One

18. Paragraphs 1 to 17 are re-alleged and incorporated herein by reference.

19. Commerce decision to select Malaysia as the primary surrogate country is unsupported by substantial evidence and not in accordance with law. Among comparable countries that were significant producers of activated carbon and comparable merchandise during the POR and were otherwise equally suited, Romania had superior data quality. Commerce failed to provide any analysis comparing data quality among potential surrogate countries, thus, Commerce's assertion that Malaysia and Türkiye are more comparable to China than Romania is unsupported by substantial evidence and not in accordance with law.

### Count Two

20. Paragraphs 1 to 19 are re-alleged and incorporated herein by reference.

21. Commerce's decision to use the Malaysia surrogate value for coal tar despite unreliable data was not supported by substantial evidence or in accordance with law. Jilin Bright and GHC both placed information on the record establishing that coal tar data from Malaysia are unreliable because it does not represent a broad market average, are undermined by evidence that the data was incomplete and aberrational, and are out of sync with world pricing. Thus, Commerce's calculation of the AD margins of Jilin Bright and GHC were based upon information that was not the best available information. Commerce's decision was thus not in accordance with law and unsupported by substantial evidence.

### Count Three

22. Paragraphs 1 to 21 are re-alleged and incorporated herein by reference.

23. Commerce's decision not to revise Jilin Bright's VAT tax calculation for an obvious clerical error was not supported by substantial evidence or in accordance with law. Jilin Bright highlighted the obvious error in its case brief – a VAT tax entry that is almost 40 times larger than any other VAT tax entry, despite 13 entries with larger volumes and an identically-sized shipment with a VAT tax just 3% of the obviously-erroneous entry, and without referring to the description Jilin Bright provided to Commerce which is obvious on the record. Commerce's refusal to correct the error is unsupported by substantial evidence and not in accordance with law.

### Count Four

24. Paragraphs 1 to 23 are re-alleged and incorporated herein by reference.

25. Despite correcting the error in the bituminous coal SV price for GHC, Commerce did not amend the calculation to change the SV for bituminous coal to $1,552.65 (corresponding to HTS 270112) for Jilin Bright, but instead continued using $1,720.22 (corresponding to HTS

270119) in the final result. [1] This error – as acknowledged by Commerce in the *Amended Final* – is erroneous as unsupported by substantial evidence and not in accordance with law.

## Count Five

26. Paragraphs 1 to 25 are re-alleged and incorporated herein by reference.

27. Commerce's decision to use an activated materials SV for activated carbon GHC purchased from an unaffiliated supplier and resold by GHC to the U.S. market was unsupported by substantial evidence and not in accordance with law. Commerce did not include the activated materials SV in the preliminary results, and thus its decision to include the activated materials SV appeared for the first time in the final results. GHC's unaffiliated supplier did not sell any of the activated carbon produced from purchased activated materials to GHC. The unaffiliated supplier only sold activated carbon to GHC that it had produced from coal, which GHC then exported to the U.S. market. Under these circumstances, including an activated material SV for GHC is unsupported by substantial record evidence and not in accordance with law.

## Count Six

28. Paragraphs 1-27 are re-alleged and incorporated herein by reference.

29. Commerce made other decisions in the *Final Results* and *Amended Final Results* resulting in excessively high and erroneous final antidumping duty margins for GHC and Jilin Bright that are not supported by substantial evidence on the record and are otherwise not in accordance with law.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request that the Court:

(a) enter judgment in Plaintiffs' favor;

(b) declare that with respect to the issues raised in this Complaint, Commerce's

determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c) remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of Plaintiffs' antidumping duty margins; and

(d) provide such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Irene H. Chen
Irene H. Chen
**VCL LAW LLP**
1945 Old Gallows Road, Suite 260
Vienna, VA  22182
Tel: (301) 760-7393
Fax: (301) 263-7700
Email: ichen@vcllegal.com

Date: January 20, 2025

*Counsel to Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd., and Jilin Bright Future Chemicals Co., Ltd.*