NONCONFIDENTIAL
VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE
_____

| | | |
|---|---|---|
| NINGXIA GUANGHUA CHERISHMET ACTIVATED CARBON CO., LTD. ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CARBON ACTIVATED TIANJIN CO., LTD. and CARBON ACTIVATED CORPORATION, | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BENGBU MODERN ENVIRONMENTAL CO., LTD., ET AL., | ) | Consol. Court No. 24-00262 |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CALGON CARBON CORPORATION and NORIT AMERICAS, INC., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____)

CONSOLIDATED PLAINTIFFS' RULE 56.2 MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT UPON THE AGENCY RECORD

JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400
Counsel to Calgon Carbon Corporation and
Norit Americas, Inc.

August 14, 2025

NONCONFIDENTIAL
VERSION

## Table of Contents

**Page**

STATEMENT PURSUANT TO RULE 56.2 ................................................................. 1

STATEMENT OF FACTS ......................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................. 6

STANDARD OF REVIEW ....................................................................................... 7

ARGUMENT ............................................................................................................. 9

    I.      COMMERCE'S MODIFICATION TO THE VALUATION OF BITUMINOUS COAL CONSUMPTION IN THE AMENDED FINAL RESULTS WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND MUST BE REMANDED TO THE AGENCY ........................................... 9

           A.     Commerce's Valuation of GHC's Bituminous Coal Consumption Was a Methodological Decision That the Agency Impermissibly Modified Based on Its Ministerial Error Regulation ................................ 9

           B.     GHC Failed to Address Commerce's Valuation of Bituminous Coal Consumption in a Timely Manner During the Administrative Briefing Process ........................................................................................ 12

CONCLUSION ........................................................................................................ 18

NONCONFIDENTIAL
VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

Apex Frozen Foods Private Ltd. v. United States,
    862 F.3d 1322 (Fed. Cir. 2017).................................................................................13

Euro SME Sdn Bhd. v. United States,
    Slip Op. 24-16, 2024 Ct. Int'l Trade LEXIS 16 (Feb. 12, 2024)......................................12, 16

Goodluck India Ltd. v. United States,
    670 F. Supp. 3d 1353 (Ct. Int'l Trade 2023) ................................................................8

Husteel Co. v. United States,
    491 F. Supp. 2d 1283 (Ct. Int'l Trade 2007) ...............................................................8

Motor Vehicle Ass'n v. State Farm Mut.,
    463 U.S. 29 (1983)........................................................................................................8

Nippon Steel Corp. v. United States,
    337 F.3d 1373 (Fed. Cir. 2003)....................................................................................8

QVD Food Co., Ltd. v. United States,
    658 F.3d 1318 (Fed. Cir. 2011)........................................................................ *passim*

Stanley Works (Langfang) Fastening Sys. v. United States,
    964 F. Supp. 2d 1311 (Ct. Int'l Trade 2013) .............................................................15

Suramerica de Aleaciones Laminadas, C.A. v. United States,
    44 F.3d 978 (Fed. Cir. 1994)........................................................................................8

Timken Co. v. United States,
    79 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) ................................................................9

Zhejiang Sanhua Co. v. United States,
    61 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) ........................................................11, 12

### Statutes and Regulations

19 U.S.C. § 1516a(b)(1)(B)(i)...............................................................................................8

28 U.S.C. § 2637(d) .............................................................................................................13

19 C.F.R. § 351.224(c)(1)...............................................................................................13, 16

19 C.F.R. § 351.224(f) .....................................................................................................9, 10

NONCONFIDENTIAL
VERSION

19 C.F.R. § 351.309(c)(2) ..........................................................................................13, 16

**Administrative Determinations**

Administrative Review of the Antidumping Duty Order on Certain Activated
    Carbon from the People's Republic of China; 2022-2023: Analysis of
    Ministerial Error Allegation (Dep't Commerce Dec. 17, 2024) ("Amended
    Final Memo") ..................................................................................................1, 6, 16

Certain Activated Carbon From the People's Republic of China:
    Amended Final Results of Antidumping Duty Administrative Review; 2022–
    2023, 89 Fed. Reg. 104,978 (Dep't Commerce Dec. 26, 2024) ("Amended
    Final Results") ........................................................................................................1, 6

Certain Activated Carbon From the People's Republic of China:
    Final Results of Antidumping Duty Administrative Review; 2022–2023, 89
    Fed. Reg. 92,893 (Dep't Commerce Nov. 25, 2024) ("Final Results") ...................................1

Certain Activated Carbon From the People's Republic of China:
    Preliminary Results of Antidumping Duty Administrative Review;
    2022–2023, 89 Fed. Reg. 35,797 (Dep't Commerce May 2, 2024)
    ("Preliminary Results") ...........................................................................................3

Certain Corrosion-Resistant Steel Products From the Socialist Republic of
    Vietnam: Amended Preliminary Affirmative Determination of Sales at Less
    Than Fair Value, 90 Fed. Reg. 22,690 (Dep't Commerce May 29, 2025), and
    accompanying Analysis of Ministerial Error Allegations Memorandum (Dep't
    Commerce May 22, 2025) ("CORE from Vietnam Memo") ...................................11

Initiation of Antidumping and Countervailing Duty Administrative Reviews,
    88 Fed. Reg. 38,021 (Dep't Commerce June 12, 2023) ..........................................2

Issues and Decision Memorandum for the Final Results of the 2022-2023
    Administrative Review of the Antidumping Duty Order on Certain Activated
    Carbon from the People's Republic of China (Nov. 5, 2024) ("Final IDM") ......................1, 5

NONCONFIDENTIAL
VERSION

## STATEMENT PURSUANT TO RULE 56.2

Calgon Carbon Corporation and Norit Americas, Inc. (hereinafter "Consolidated Plaintiffs" or "Petitioners") challenge certain aspects of the U.S. Department of Commerce's amended final results in the sixteenth annual administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China.  See Certain Activated Carbon From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2022–2023, 89 Fed. Reg. 104,978 (Dep't Commerce Dec. 26, 2024) (PR 277) ("Amended Final Results")[1] and the accompanying Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China; 2022-2023: Analysis of Ministerial Error Allegation (Dep't Commerce Dec. 17, 2024) (PR 271) ("Amended Final Memo"), amending Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2022–2023, 89 Fed. Reg. 92,893 (Dep't Commerce Nov. 25, 2024) (PR 267) ("Final Results"), and the accompanying Issues and Decision Memorandum for the Final Results of the 2022-2023 Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China (Nov. 5, 2024) (PR 251) ("Final IDM").

## STATEMENT OF FACTS

On June 12, 2023, the U.S. Department of Commerce ("Commerce" or "the Department") initiated the sixteenth annual administrative review of the antidumping duty order on imports of certain activated carbon from the People's Republic of China ("China").  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg.

---

[1]    Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR __)" and "(PR __)") provided in the Index to the Administrative Record filed with the Court on March 3, 2025 (ECF No. 40).

38,021, 38,025-26 (Dep't Commerce June 12, 2023) (PR 29). On July 27, 2023, Commerce selected as mandatory respondents the two Chinese companies that accounted for the largest export volumes of subject merchandise to the United States during the period of review ("POR"), Jilin Bright Future Chemicals Co., Ltd. ("Jilin Bright") and Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. ("GHC" or "Cherishmet"). See Memorandum titled "Sixteenth Antidumping Duty Administrative Review of Certain Activated Carbon from the People's Republic of China: Respondent Selection" (July 27, 2023) (CR 35, PR 76).

From August 2023 to April 2024, the mandatory respondents filed questionnaire responses and supplemental questionnaire responses with Commerce. In its questionnaire responses, mandatory respondent GHC reported consumption of a number of factors of production to produce subject activated carbon. See generally Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. Section D Questionnaire Response (Sept. 28, 2023) (CR 64-78, PR 123). In a supplemental questionnaire response filed shortly before Commerce issued its preliminary results of review, GHC confirmed its consumption of various factors of production, [                                                    ] to produce in-scope activated carbon during the POR. See Letter from GHC titled "Second Supplemental Section A, C, and D Questionnaire Response" at Exh. 2SD-A-8b (Apr. 5, 2024) (CR 171-77, PR 202).

Between December 2023 and April 2024, interested parties submitted to Commerce proposed surrogate values for the factors of production reported by the mandatory respondents. GHC urged Commerce to select Romania as the surrogate country and provided information on Romanian imports to value the various factors of production, including bituminous coal and lump coal. See Letter titled "Comments on the Department's Selection of a Surrogate Country" at 2 and Exh. 1 (Dec. 20, 2023) (PR 146-49) ("12/20 GHC SV Submission"). In its rebuttal

comments addressing surrogate values, GHC's again reported distinct information to value its consumption of bituminous coal and lump coal. <u>See</u> GHC Rebuttal Comments on Surrogate Value Information at Exh. 1 (Jan. 10, 2024) (PR 155-56).

In the <u>Preliminary Results</u>, Commerce selected surrogate information to be used in valuing the various factors of consumption reported by the mandatory respondents. <u>See</u> <u>Certain Activated Carbon From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2022–2023</u>, 89 Fed. Reg. 35,797 (Dep't Commerce May 2, 2024) (PR 223) ("<u>Preliminary Results</u>"). As relevant to this action, Commerce valued reported consumption of bituminous coal using the value of Malaysian imports of merchandise classified under Harmonized Tariff Schedule ("HTS") subheading 2701.12 (1,552.65 MYR per metric ton), and the agency valued reported consumption of lump coal using the value of Malaysian imports of merchandise classified under HTS subheading 2701.19 (1,720.22 MYR per metric ton). <u>See</u> Prelim. Surrogate Value Memorandum at Exhs. 1-8 (excel file) (Dep't Commerce Apr. 29, 2024) (PR 216-17). Commerce's preliminary margin program also accounted for the reported consumption of both distinct inputs (<u>i.e.</u>, bituminous coal and lump coal) using the following programming language:

[

]

[

]

GHC's Preliminary Calculation Memorandum at Attachment 1 (SAS Margin Program at **[**

**]**) (CR 213, PR 219).

NONCONFIDENTIAL
VERSION

Following Commerce's issuance of the <u>Preliminary Results</u>, interested parties filed administrative case and rebuttal briefs.  With respect to its reported consumption of lump coal, GHC argued that Commerce's cost calculations incorrectly included lump coal with direct materials, instead of with energy costs.  <u>See</u> Case Brief of Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. at 5-8 (June 12, 2024) (CR 223, PR 231) ("GHC's Administrative Case Brief").  In making this argument, GHC specifically pointed to Commerce's ministerial error allegation regulations and urged correction of this calculation issue in the final results.  <u>See</u> <u>id.</u> at 6.  GHC argued that it [

] such that Commerce's inclusion of "LUMPCOAL" in the calculation of direct material cost and an energy material input resulted in the double-counting of its consumption of lump coal.  <u>See</u> <u>id.</u> at 7-8.  GHC also stated that it

> included 'Lump Coal with HTS number 270119' in raw material category in the 12/20 GHC SV Submission only for the purpose of keeping the HTS 270119 as an alternative choice for raw material bituminous coal SV input.

<u>Id.</u> at 8.  GHC urged Commerce to remove LUMPCOAL from the direct material calculations for the final results, and instead to include it with energy inputs only.  <u>See</u> <u>id.</u>  GHC also referred to Commerce's selection of surrogate information to value bituminous coal consumption several times throughout its affirmative case brief in addressing Commerce's reliance on Malaysia as the primary surrogate country.  <u>See</u> <u>id.</u> at 3, 13, 17-18.

In the <u>Final Results</u>, Commerce agreed with GHC's argument that the agency "inadvertently counted LUMPCOAL as a direct material and an energy {factor of production} for both respondents, which resulted in double counting of the LUMPCOAL expense."  <u>Final IDM</u> at 4 (Comment 1) (PR 251).  To correct this error, Commerce removed LUMPCOAL as a direct material and maintained it as an energy input in the final calculations.  <u>See</u> <u>id.</u>

NONCONFIDENTIAL
VERSION

Following Commerce's issuance of the <u>Final Results</u>, GHC claimed that the final results contained a ministerial error in that Commerce incorrectly "used the surrogate value for lump coal in place of the surrogate value for bituminous coal" in the final results programming language. Ningxia Guanghua Cherishmet Ministerial Error Allegation at 2-3 (Nov. 20, 2024) (PR 265). GHC urged Commerce to correct this error "by using 1,552.65 MYR, the surrogate value for bituminous coal, for the bituminous coal input to calculate" an amended rate for GHC. <u>See</u> <u>id.</u> at 3.

In response to GHC's ministerial error allegation, Petitioners filed responsive comments explaining that GHC's argument was methodological, not ministerial, in nature and, therefore, should not be subject to a post-final results correction. <u>See</u> Petitioners' Response to GHC's Ministerial Error Allegation at 2-6 (Nov. 25, 2024) (CR 243, PR 268) ("Petitioners' Response to GHC's Ministerial Error Allegation"). Petitioners explained that Commerce's valuation of bituminous coal in the <u>Final Results</u> mirrored its valuation of bituminous coal in the <u>Preliminary Results</u>, and that GHC raised no arguments regarding that valuation during administrative briefing. <u>See</u> <u>id.</u> at 4-5. Indeed, Commerce's margin calculation program in the <u>Preliminary Results</u> and <u>Final Results</u> is identical with respect to the valuation of bituminous coal:

<u>Preliminary Results</u>:

[

]

<u>Final Results</u>:

[

]

-5-

NONCONFIDENTIAL
VERSION

Compare GHC's Prelim. Calc. Memo at Attachment 1 (SAS Margin Program at [          ])
(CR 213, PR 219) with Memorandum titled "Final Analysis Memorandum for Ningxia
Guanghua Cherishmet Activated Carbon Co., Ltd.," at Attachment 1 (SAS Margin Program at
[          ]) (Nov. 5, 2024) ("GHC's Final Calc. Memo") (CR 231, PR 253).

In fact, despite having raised arguments regarding Commerce's preliminary treatment of
consumption of both lump coal and bituminous coal, and citing directly to the preliminary
programming language for lump coal calculations, nowhere in its case brief did GHC argue that
Commerce's preliminary programming language to determine the value of its bituminous coal
consumption was incorrect or should be modified.   See generally Petitioners' Response to
GHC's Ministerial Error Allegation (CR 243, PR 268).

On December 17, 2024, Commerce issued the amended final results and implemented the
surrogate value calculation change requested by GHC.  See Amended Final Results (PR 277) and
Amended Final Memo at 5-7 (PR 271).  Despite agreeing with Petitioners that GHC failed to
raise this argument in its administrative case brief addressing the Preliminary Results, Commerce
agreed that the error was ministerial and modified the valuation of GHC's bituminous coal
consumption accordingly. See id. at 7.

## SUMMARY OF ARGUMENT

In the Amended Final Results, Commerce impermissibly modified the agency's valuation
of bituminous coal consumption pursuant to GHC's claim that the valuation in the Final Results
was a ministerial error, rather than a methodological decision.  First, Commerce's bituminous
coal surrogate valuation is methodological, not ministerial, in nature.  The agency typically
considers the selection of a surrogate to value a factor of production to be a methodological
decision, such that it is not subject to change pursuant to the agency's ministerial error

regulation. Critically, Commerce used identical programming language in the Preliminary Results and the Final Results to value GHC's bituminous coal consumption, and GHC's administrative brief was silent on this issue. Moreover, nothing on the record indicates that the agency's programming language contains an error in addition or subtraction, or some other type of unintended clerical error. Accordingly, Commerce erred in concluding that the valuation of bituminous coal in both the Preliminary Results and Final Results constituted a ministerial error.

Second, irrespective of whether the Court determines that the correction in the Amended Final Results was methodological or ministerial in nature, remand is nevertheless warranted because GHC failed to raise this issue in a timely manner. The doctrine of administrative exhaustion requires parties to raise all relevant arguments before the administrative agency prior to a court appeal. Commerce's regulations similarly require that all arguments be raised in parties' administrative case briefs. Case law also require parties to raise during administrative briefing any and all arguments regarding perceived errors made by Commerce in the preliminary results *whether or not those errors were ministerial or methodological in nature*. In each regard, GHC failed to present its argument to Commerce in a timely manner, raising it only after the agency's issuance of the Final Results. Accordingly, the Amended Final Results must be remanded to Commerce with instructions to value bituminous coal in the same manner used by the agency in the Preliminary Results and Final Results.

## STANDARD OF REVIEW

This Court will hold unlawful any aspect of Commerce's final determination that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "'more than a mere scintilla'" and "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).    In determining whether substantial evidence supports an agency determination, the Court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"  Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting Atlantic Sugar. Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

The standard also requires Commerce to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  Motor Vehicle Ass'n v. State Farm Mut., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)); see also Husteel Co. v. United States, 491 F. Supp. 2d 1283, 1291-93 (Ct. Int'l Trade 2007) (finding the agency's determination unsupported by substantial evidence because the agency "did not provide a reasoned explanation supported by a stated connection between the facts found and the choices made") (citation omitted).

"Agency action that deviates from prior policy decisions or established practice without reasoned justification is arbitrary and capricious." Goodluck India Ltd. v. United States, 670 F. Supp. 3d 1353, 1374 (Ct. Int'l Trade 2023) (citing Huvis Corp. v. United States, 570 F.3d 1347, 1354 (Fed. Cir. 2009)) (citing FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009)); Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1378 n.5 (Fed. Cir. 2007); In re Section 301 Cases, 570 F. Supp. 3d 1306, 1347 (Ct. Int'l Trade 2022)); see also Timken Co. v. United States, 79 F. Supp. 3d 1350, 1360-61 (Ct. Int'l Trade 2015) ("Even when operating under a statute that explicitly gives Commerce discretion, 'if Commerce has a routine practice for addressing like situations, it must either apply that practice or provide a reasonable explanation

NONCONFIDENTIAL
VERSION

as to why it departs therefrom.'") (quoting <u>Save Domestic Oil v. United States</u>, 357 F.3d 1278, 1283-84 (Fed. Cir. 2004)).

<u>ARGUMENT</u>

I.    <u>COMMERCE'S MODIFICATION TO THE VALUATION OF BITUMINOUS COAL CONSUMPTION IN THE AMENDED FINAL RESULTS WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND MUST BE REMANDED TO THE AGENCY</u>

A.    <u>Commerce's Valuation of GHC's Bituminous Coal Consumption Was a Methodological Decision That the Agency Impermissibly Modified Based on Its Ministerial Error Regulation</u>

Commerce's regulations permit the correction of a ministerial error in connection with the issuance of the preliminary results and final results of an administrative review. Those regulations define ministerial error as

> an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial.

19 C.F.R. § 351.224(f). Commerce's regulations further provide that

> {a} party to the proceeding to whom the Secretary has disclosed calculations performed in connection with a final determination or the final results of a review may submit comments concerning any ministerial error in such calculations.

<u>Id.</u> at § 351.224(c)(1). The regulations also require interested parties in an administrative review to identify in their case briefs any ministerial errors made in the preliminary results. <u>See</u> <u>id.</u>

In both the <u>Preliminary Results</u> and <u>Final Results</u> of the underlying administrative review, Commerce used identical programming language to value GHC's consumption of bituminous coal:

<u>Preliminary Results</u>:

NONCONFIDENTIAL
VERSION

[

]

Final Results:

[

]

Compare GHC's Prelim. Calc. Memo at Attachment 1 (SAS Margin Program at [          ]

(CR 213, PR 219) with GHC's Final Calc. Memo at Attachment 1 (SAS Margin Program at

[          ]) (CR 231, PR 253).   The implementation of programming language to value

bituminous coal consumption reflects a methodological decision by Commerce.  Nothing on the

record indicates that the above programming language used to value bituminous coal includes an

error in addition or subtraction, or some other type of clerical error that was unintended by

Commerce.  See 19 C.F.R. § 351.224(f).  Indeed, Commerce's explanation in the Amended Final

Results is thin and fails to support the agency's approach.  The Amended Final Memo cites to the

preliminary surrogate value memorandum as support for the claim that Commerce intended to

value bituminous coal using the value sought by GHC (1,552.65 MYR per metric ton).   See

Amended Final Memo at 6 n. 47.  The preliminary surrogate value memorandum, however,

includes no discussion of the valuation of bituminous coal, and instead discusses that value and

corresponding HTS subheading code in the context of the steam coal surrogate value.  See

Prelim. SV Memo at 6 ("Steam Coal") (PR 216).   Accordingly, Commerce's analysis in the

Amended Final Memo points to nothing on the record to demonstrate that it intended to value

bituminous coal consumption in a manner other than the one used in both the Preliminary

Results and Final Results programming language.

NONCONFIDENTIAL
VERSION

Commerce considers the selection of surrogate information to value a factor of production to be a methodological decision that is not subject to change using the agency's ministerial error regulation. For example, recently in CORE from Vietnam, Commerce was presented with several ministerial error allegations and explained that the "selection of an appropriate {surrogate value} is a methodological issue, and not a ministerial error as defined within 19 CFR 351.224(f)." Certain Corrosion-Resistant Steel Products From the Socialist Republic of Vietnam: Amended Preliminary Affirmative Determination of Sales at Less Than Fair Value, 90 Fed. Reg. 22,690 (Dep't Commerce May 29, 2025), and accompanying Analysis of Ministerial Error Allegations Memorandum at 6 (Dep't Commerce May 22, 2025) (hereinafter "CORE from Vietnam Memo"); see also Zhejiang Sanhua Co. v. United States, 61 F. Supp. 3d 1350, 1356-57 (Ct. Int'l Trade 2015) ("It seems that this issue is less about a genuine attempt to correct a ministerial error and more an effort to reargue the substantive merits of a surrogate value determination. . . . In any event Commerce's denial of {respondent's} ministerial error request was reasonable on this administrative record.").

Similar to the situation presented in this action, in CORE from Vietnam, Commerce was presented with a question of whether the treatment of certain freight expenses reflected in the SAS programming language constituted a ministerial error. See CORE from Vietnam Memo at 5. Commerce determined that its treatment of the expenses in the programming language was a methodological issue, not a ministerial error, and accordingly did not implement the requested modification. See id.; see also id. at 7 (regarding treatment of a quantity variable in the programming language for which Commerce found "that this is a methodological issue because Commerce's reliance on the reported quantity data field does not constitute a clerical, arithmetic, or other unintentional error expressed by 19 CFR 351.224(f)").

NONCONFIDENTIAL
VERSION

Nevertheless, in the Amended Final Results, Commerce modified the agency's valuation of GHC's bituminous coal consumption based on GHC's claim that the valuation was a ministerial error rather than a methodological decision. Commerce's modification in the Amended Final Results was improper because Commerce applied the same valuation for bituminous coal in the Preliminary Results and the Final Results, and GHC failed to satisfy the regulatory requirement to challenge that valuation during the administrative briefing process. See Zhejiang Sanhua, 61 F. Supp. 3d at 1356-57; see also Euro SME Sdn Bhd. v. United States, Slip Op. 24-16 at 34-35, 2024 Ct. Int'l Trade LEXIS 16, at *46-47 (Feb. 12, 2024) ("Methodological choices are not unintentional errors and therefore cannot be raised using the ministerial error process."). Because Commerce's bituminous coal surrogate value valuation is methodological (not ministerial) in nature, Commerce erred in modifying its determination in the Final Results based on GHC's ministerial error allegation.

Accordingly, Commerce's modification to its valuation of bituminous coal consumption is improper, not supported by substantial evidence, and should be remanded to the agency.

**B.    GHC Failed to Address Commerce's Valuation of Bituminous Coal Consumption in a Timely Manner During the Administrative Briefing Process**

Even if this Court agrees that GHC's claim is ministerial in nature, GHC's claim was nonetheless untimely because the issue was not addressed in GHC's administrative case brief despite Commerce having utilized the same programming language in both the Preliminary Results and Final Results. GHC's failure to challenge Commerce's valuation of bituminous coal in a timely manner (i.e., during the administrative briefing process) warrants remand.

The statute requires that parties exhaust their administrative remedies by raising relevant arguments to the administrative agency before appealing them in the courts. See 28 U.S.C.

-12-

NONCONFIDENTIAL
VERSION

§ 2637(d); see also Apex Frozen Foods Private Ltd. v. United States, 862 F.3d 1322 (Fed. Cir.

2017) ("{The exhaustion} rule gives the agency the opportunity to correct its own mistakes,

including fact-specific shortfalls in its analysis, before it is haled into federal court.  Commerce

had no such opportunity to correct the alleged flaw in its meaningful difference finding.") (citing

Apex Frozen Foods Private Ltd. v. United States, 37 F. Supp. 3d 1286, 1297 (Ct. Int'l Trade

2014) (internal citations and quotation marks omitted)).  To ensure parties raise all relevant

arguments in a timely manner, Commerce's regulations require that a party's "case brief must

present all arguments that continue in the submitter's view to be relevant to the Secretary's final

determination or final results."  19 C.F.R. § 351.309(c)(2).  The regulations also direct interested

parties in an administrative review to include in their case briefs any ministerial errors contained

in the preliminary results.  See id. at § 351.224(c)(1).

Likewise, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has held

that Commerce's "refusal to make a ministerial correction is not reversible error when the

alleged mistake was discoverable during earlier proceedings but was not pointed out to

Commerce during the time period specified by regulation."  QVD Food Co., Ltd. v. United

States, 658 F.3d 1318, 1328 (Fed. Cir. 2011) (citing Dorbest, 604 F.3d 1363, 1377 (Fed. Cir.

2010)).  In QVD Food, a party alleged after the final results that Commerce made a ministerial

error in its financial ratio calculation that should be corrected.  See 658 F.3d 1318, 1328 (Fed.

Cir. 2011).  Commerce declined to correct the alleged error, determining that the mistake alleged

was not a ministerial error and, thus, could not be corrected after the agency's issuance of its

final results.  See id.  The Federal Circuit upheld Commerce's finding and agreed that QVD's

argument involved a methodological agency determination that could not be changed using the

ministerial error provision in Commerce's regulations.  See id.  Notably, the Federal Circuit

NONCONFIDENTIAL
VERSION

explained that even if the error claimed by QVD was ministerial in nature, QVD failed to raise the claim in a timely fashion such that Commerce's decision not to modify the calculation was correct.  See id. ("Even if the error alleged by QVD were ministerial in nature, Commerce's failure to correct it would not constitute an abuse of discretion because QVD did not raise the issue in a timely fashion.").

Just like the circumstances presented in this action, in QVD Food, the calculation at issue was present in both Commerce's preliminary results and final results – and QVD failed to present its argument until after the final results, despite the requirements of Commerce's regulations:

> In the present case, any alleged error in Commerce's calculation of the general expense ratio in the final results was necessarily present in the preliminary results, because Commerce made no change to the financial ratio calculations. Commerce's regulations specify the procedure by which ministerial errors in the preliminary results of antidumping duty administrative reviews may be challenged. Commerce discloses any calculations made in the preliminary results to interested parties, 19 C.F.R. § 351.224(b), and interested parties must point out any ministerial errors in their case briefs, id. § 351.224(c)(1); see also id. § 351.309(c)(2) ("The case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results . . . ."). In its case brief following the preliminary results, QVD alleged certain ministerial errors, *but it failed to allege any error concerning financial ratios. Commerce's refusal to make a ministerial correction is not reversible error when the alleged mistake was discoverable during earlier proceedings but was not pointed out to Commerce during the time period specified by regulation.* Dorbest, 604 F.3d at 1377. For that reason as well, we conclude that the trial court properly rejected QVD's challenge to the financial ratio calculations.

Id. (emphasis added).   Pursuant to QVD Food, GHC was obligated to raise during the administrative briefing process any and all arguments regarding perceived errors made by

-14-

Commerce in the preliminary results *whether or not* those errors were ministerial or methodological in nature.  See id.

QVD Food is consistent with Dorbest Ltd. v. United States, wherein the Federal Circuit applied the doctrine of administrative exhaustion to hold that a ministerial error made by Commerce in its preliminary determination need not be corrected when no interested party identified the error in a timely manner.  See 604 F.3d at 1376-77; see also Stanley Works (Langfang) Fastening Sys. v. United States, 964 F. Supp. 2d 1311, 1341-42 (Ct. Int'l Trade 2013) ("Stanley's failure to raise any ministerial allegations at the time Commerce's calculations were disclosed, or even in its administrative case brief, is fatal to the claim that it seeks to press here.  As the Court of Appeals has squarely held, 'a ministerial error made by Commerce that was reflected in its preliminary antidumping duty determination need not be corrected {by Commerce} when no interested party pointed out the error in a timely manner.'") (quoting QVD Food, 658 F.3d at 1328 (citing Dorbest Ltd., 604 F.3d at 1376-77)).  Here, GHC failed to raise its claim concerning the valuation of its reporting of bituminous coal consumption in a timely manner during administrative briefing before the agency as required by Commerce's regulations. Commerce first applied the programming language relying on Malaysian surrogate information for lump coal to value GHC's consumption of bituminous coal in the Preliminary Results.  See Prelim. Calc. Memo for GHC at Attachment 1 SAS Programming, [            ] (CR 213, PR 219).  Indeed, the record demonstrates that Commerce used identical programming language in the Preliminary Results and Final Results to value GHC's bituminous coal consumption:

Preliminary Results:

[

]

NONCONFIDENTIAL
VERSION

Final Results:

[

]

Compare GHC's Prelim. Calc. Memo at Attachment 1 (SAS Margin Program at [          ] (CR 213, PR 219) with GHC's Final Calc. Memo at Attachment 1 (SAS Margin Program at [          ]) (CR 231, PR 253).   Accordingly, GHC was on notice of Commerce's methodology for valuing bituminous coal consumption when the preliminary results were issued, yet it failed to raise any argument with respect to this valuation in its administrative case brief. See Euro SME Sdn, Slip Op. 24-16 at 34-35, 2024 Ct. Int'l Trade LEXIS 16, at *46-47 ("'{W}hen the alleged mistake was discoverable during earlier proceedings but was not pointed out to Commerce during the time period specified by regulation,' it may not be raised after the publication of the Final Results as a ministerial error.") (French brackets added) (citation omitted).

Commerce agreed that GHC failed to raise this argument in its case brief following the Preliminary Results, yet nonetheless modified the programming language in the Amended Final Results after finding that it constituted a ministerial error.  See Amended Final Memo at 7 (PR 271).  Commerce's actions are impermissible and contrary to both the regulation requiring that a party's case brief present all arguments that continue in the submitter's view to be relevant to the final results and the regulation directing a party's case brief to include any ministerial errors made in the preliminary results.  See 19 C.F.R. §§ 351.309(c)(2); 351.224(c)(1).

Here, like in QVD Food, GHC raised other calculation issues pertaining to lump coal and bituminous coal during administrative briefing.  See GHC's Administrative Case Brief at 3, 8,

NONCONFIDENTIAL
VERSION

13, 17-18 (CR 223, PR 231).  For example, GHC's case brief argued the <u>Preliminary Results</u>

contained the following ministerial error:

> Commerce's second ministerial error was the double counting of "LUMPCOAL" cost.   GHC used  [
>
> ]  GHC included "Lump Coal with HTS number 270119" in raw material category in the 12/20 GHC SV Submission only for the purpose of keeping the HTS 270119 as an alternative choice for raw material bituminous coal SV input. However, as shown below, Commerce incorrectly included "LUMPCOAL" in the calculation of direct material input cost while also including "LUMPCOAL" with the energy material input cost, leading to a double account of lump coal cost.

<u>Id.</u> at 8 (CR 223, PR 231).  In support of this argument, GHC cited Commerce's margin

program,  which  shows  [




                    ]

        [












                                                                    ]

<u>Id.</u> (emphasis in original).  GHC's case brief also referred to Commerce's choice of surrogate

information to value bituminous coal in several instances in discussing Commerce's reliance on

Malaysia as the primary surrogate country.  <u>See id.</u> at 3, 13, 17-18.  Yet, despite raising these

other calculation issues pertaining to lump coal and bituminous coal, nowhere in its case brief

did GHC challenge Commerce's preliminarily valuation of its bituminous coal consumption

NONCONFIDENTIAL
VERSION

based on Malaysian surrogate information concerning the value for lump coal (i.e., merchandise classified under HTS subheading 2701.19).

If GHC disagreed with Commerce's methodological decision regarding the valuation of GHC's bituminous coal input in the <u>Preliminary Results</u>, the appropriate means to raise that argument was during the agency's administrative briefing process. GHC was on notice of Commerce's surrogate value choice because the agency took the same approach in the <u>Preliminary Results</u> and the <u>Final Results</u>, and GHC was obligated (pursuant to Commerce's regulations and the doctrine of administrative exhaustion) to raise this argument in its administrative case brief.

## <u>CONCLUSION</u>

For these reasons, we urge the Court to determine that Commerce's <u>Amended Final Results</u> are inconsistent with Commerce's regulations and the doctrine of administrative exhaustion and should be remanded to the agency for further findings.

Respectfully submitted,

/s/ Melissa M. Brewer
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER

August 14, 2025

**CERTIFICATE OF COMPLIANCE
WITH U.S. COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to the United States Court of International Trade Standard Chambers procedures, counsel for Consolidated Plaintiffs Calgon Carbon Corporation and Norit Americas Inc. certifies that this Rule 56.2 Memorandum of Law in Support of its Motion for Judgment Upon the Agency Record contains 5,098 words, including footnotes, tables, and charts. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

/s/ Melissa M. Brewer
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Calgon Carbon Corporation and
Norit Americas Inc.

August 14, 2025

4931-8294-8186v.1