NONCONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| NINGXIA GUANGHUA CHERISHMET ACTIVATED CARBON CO., LTD., ET AL., <br><br> Plaintiffs, <br><br> and <br><br> CARBON ACTIVATED TIANJIN CO., LTD. and CARBON ACTIVATED CORPORATION, <br><br> Consolidated Plaintiffs, <br><br> and <br><br> BENGBU MODERN ENVIRONMENTAL CO., LTD., ET AL., <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CALGON CARBON CORPORATION and NORIT AMERICAS, INC., <br><br> Defendant-Intervenors. | Consol. Court No. 24-00262 |

REPLY BRIEF OF CONSOLIDATED PLAINTIFFS
CALGON CARBON CORPORATION AND NORIT AMERICAS, INC.

JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC 20024
(202) 342-8400
Counsel to Calgon Carbon Corporation and
Norit Americas, Inc.

April 24, 2026

**NONCONFIDENTIAL**

## Table of Contents

**Page**

ARGUMENT .................................................................................................................2

I.       COMMERCE'S AMENDED CALCULATION OF GHC'S
         CONSUMPTION OF BITUMINOUS COAL IS NOT SUPPORTED BY
         SUBSTANTIAL EVIDENCE ...........................................................................2

         A.     Defendant Fails to Demonstrate That the Issue Presented Is
                Ministerial and Not Methodological ..................................................2

         B.     GHC's Argument Was Untimely and Commerce Should Have
                Declined to Amend the Final Results ..................................................5

CONCLUSION ............................................................................................................8

NONCONFIDENTIAL

## Table of Authorities

**Page(s)**

### Cases

Dorbest Ltd. v. United States,
604 F.3d 1363 (Fed. Cir. 2010) ................................................................ 6-7

Euro SME Sdn Bhd. v. United States,
Ct. No. 22-00108, Slip Op. 24-16, 2024 Ct. Int'l Trade LEXIS 16
(Feb. 12, 2024) ...........................................................................................4

QVD Food Co., Ltd. v. United States,
658 F.3d 1318, 1328 (Fed. Cir. 2011) .........................................................7

### Statutes and Regulations

28 U.S.C. § 2637(d) ............................................................................... 7-8

19 C.F.R. 351.224(f) ..............................................................................2, 3

19 C.F.R. 351.309(c)(2) .......................................................................... 7-8

### Administrative Determinations

Certain Activated Carbon From the People's Republic of China:
Final Results of Antidumping Duty Administrative Review; 2022–2023,
89 Fed. Reg. 92,893 (Dep't Commerce Nov. 25, 2024) (PR 267)
("Final Results") ....................................................................... *passim*

Certain Activated Carbon From the People's Republic of China:
Amended Final Results of Antidumping Duty Administrative Review;
2022–2023, 89 Fed. Reg. 104,978 (Dep't Commerce Dec. 26, 2024) (PR 277)
("Amended Final Results") .......................................................... *passim*

Certain Activated Carbon From the People's Republic of China:
Preliminary Results of Antidumping Duty Administrative Review; 2022-2023,
89 Fed. Reg. 35,797 (Dep't Commerce May 2, 2024) (PR 223)
("Preliminary Results") .................................................................. 2-5, 7

**NONCONFIDENTIAL**

Issues and Decision Memorandum for the Final Results of the 2022-2023
  Administrative Review of the Antidumping Duty Order on Certain Activated
  Carbon from the People's Republic of China (Nov. 5, 2024) (PR 251)
  ("IDM") ...................................................................................................1

Certain Corrosion-Resistant Steel Products From the Socialist Republic of
  Vietnam: Amended Preliminary Affirmative Determination of Sales at Less
  Than Fair Value, 90 Fed. Reg. 22,690 (Dep't Commerce May 29, 2025)
  ("CORE From Vietnam") ..................................................................... 2-3

## CONSOLIDATED PLAINTIFFS' REPLY BRIEF

On behalf of Calgon Carbon Corporation and Norit Americas, Inc. (hereinafter, "Consolidated Plaintiffs" or "Petitioners"), we reply to the Response to the Motions for Judgment on the Agency Record and accompanying brief filed on behalf of the United States defending certain aspects of the U.S. Department of Commerce's ("Commerce") final results and amended final results in the sixteenth annual administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China. See Defendant's Response to Plaintiffs', Consolidated Plaintiffs', and Plaintiff-Intervenors' Motions for Judgment on the Agency Record, dated Feb. 2, 2026 (ECF Nos. 72, 73) (hereinafter, "Def. Br."); see also Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2022–2023, 89 Fed. Reg. 92,893 (Dep't Commerce Nov. 25, 2024) (PR 267) [1] (hereinafter, "Final Results"), and the accompanying Issues and Decision Memorandum for the Final Results of the 2022-2023 Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China (Nov. 5, 2024) (PR 251) (hereinafter, "IDM"), amended by Certain Activated Carbon From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2022–2023, 89 Fed. Reg. 104,978 (Dep't Commerce Dec. 26, 2024) (PR 277) and the accompanying Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China; 2022-2023: Analysis of Ministerial Error Allegation (Dep't Commerce Dec. 17, 2024) (PR 271) (hereinafter, "Amended Final Memo").

---

[1]    Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR __)" and "(PR __)") provided in the Index to the Administrative Record filed with the Court on March 3, 2025 (ECF No. 40).

NONCONFIDENTIAL

## ARGUMENT

### I.    COMMERCE'S AMENDED CALCULATION OF GHC'S CONSUMPTION OF BITUMINOUS COAL IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

#### A.    Defendant Fails to Demonstrate That the Issue Presented Is Ministerial and Not Methodological

Defendant first argues that Petitioners mischaracterize the issue presented as methodological rather than ministerial. See Def. Br. at 57. Defendant claims the alleged error does not pertain to the substance of the surrogate value selection for bituminous coal, but rather that Commerce inadvertently used the wrong surrogate value in the programming for both the Preliminary Results and the Final Results. See id. Defendant characterizes this "inadvertent inclusion of an incorrect value in the programming language" as a "quintessential ministerial error" that Commerce permissibly corrected in the Amended Final Results. Id. at 58.

Defendant is wrong because the record demonstrates that the alleged error was methodological in nature and, thus, Commerce impermissibly changed the surrogate value in the Amended Final Results. First, Defendant attempts to undermine Petitioners' reliance on CORE from Vietnam, in which Commerce explained that the "selection of an appropriate {surrogate value} is a methodological issue, and not a ministerial error as defined within 19 CFR 351.224(f)." See Def. Br. at 57 (citing Petitioners' Br. at 11 (citing Certain Corrosion-Resistant Steel Products From the Socialist Republic of Vietnam: Amended Preliminary Affirmative Determination of Sales at Less Than Fair Value, 90 Fed. Reg. 22,690 (Dep't Commerce May 29, 2025) (hereinafter "CORE From Vietnam"), and accompanying Analysis of Ministerial Error Allegations Memorandum at 6 (Dep't Commerce May 22, 2025) (hereinafter "CORE from Vietnam Memo"))). Defendant, however, simply cites to the very same language from CORE from Vietnam discussed in Petitioners' opening brief and then goes on to state that the error presented here is ministerial, not methodological. See Def. Br. at 57-58. Defendant ignores the more detailed

2

discussion Petitioners cited from <u>CORE from Vietnam</u> that discusses whether the treatment of certain freight expenses in the programming language constituted a ministerial error. <u>See</u> Memorandum of Law in Support of Judgment on the Agency Record Filed on Behalf of Consolidated Plaintiffs at 11 (Aug. 14, 2025) (ECF Nos. 55-56) (hereinafter, "Consol. Pls 56.2 Br."). There, Commerce determined that its treatment of the expenses in the programming language was a methodological issue, not a ministerial error, and accordingly did not implement the requested modification. <u>See</u> <u>CORE from Vietnam Memo</u> at 7 (regarding treatment of a quantity variable in the programming language for which Commerce found "that this is a methodological issue because Commerce's reliance on the reported quantity data field does not constitute a clerical, arithmetic, or other unintentional error expressed by 19 CFR 351.224(f)"). Defendant fails to square Commerce's discussion in <u>CORE from Vietnam</u> with its claim here that switching a surrogate value in the <u>Amended Final Results</u> is not a methodological decision.

Defendant's generalized response fails to address the principle demonstrated by Commerce's discussion in <u>CORE from Vietnam</u> that the selection of a surrogate value is a methodological decision that should not have been modified pursuant to the ministerial error provision in the Department's regulations. Commerce's selection of a surrogate value for bituminous coal was not a simple error in programming as Defendant claims (relying on 19 C.F.R. § 351.224(f)), but rather an attempt by GHC to obtain a more favorable surrogate value for its consumption of that significant input.

The implementation of programming language to value bituminous coal consumption reflects a methodological decision by Commerce. Here, Commerce used identical programming language in the <u>Preliminary Results</u> and in the <u>Final Results</u> with respect to the valuation of bituminous coal:

3

NONCONFIDENTIAL

Preliminary Results:

[

]

Final Results:

[

]

Compare GHC's Prelim. Calc. Memo at Attachment 1 (SAS Margin Program at [        ]) (CR 213, PR 219) with Final Analysis Memorandum for Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd., at Attachment 1 (SAS Margin Program at [        ]) (Nov. 5, 2024) ("GHC's Final Calc. Memo") (CR 231, PR 253).  In the Amended Final Memo discussing the ministerial error allegation, Commerce points to nothing to reflect its intent to value bituminous coal consumption in a manner other than the one used in both the Preliminary Results and Final Results programming language.  See Amended Final Memo at 6-7.  Indeed, Commerce itself has taken the position, and the courts have agreed, that "methodological choices are not unintentional errors and therefore cannot be raised using the ministerial error process."  Euro SME Sdn Bhd. v. United States, Ct. No. 22-00108, Slip Op. 24-16 at 34-35, 2024 Ct. Int'l Trade LEXIS 16, at *46-47 (Feb. 12, 2024).

Moreover, Defendant fails to explain how Commerce's decision is supported by record evidence.  The Amended Final Memo cites to the preliminary surrogate value memorandum as support to claim that Commerce intended to value bituminous coal using the value urged by GHC (1,552.65 MYR per metric ton).  See Amended Final Memo at 6 n. 47.  The preliminary surrogate value memorandum, however, includes no discussion of the valuation of bituminous coal, and instead discusses that value and corresponding HTS subheading code in the context of the steam

4

NONCONFIDENTIAL

coal surrogate value. See Prelim. SV Memo at 6 ("Steam Coal") (PR 216). Defendant fails to explain this disconnect between Commerce's claimed intent and the actual explanation on the record.

Because Commerce's determination of the manner in which to value bituminous coal is methodological (and not ministerial) in nature, and Defendant has failed to demonstrate otherwise, Commerce erred in modifying its determination in the Amended Final Results pursuant to GHC's ministerial error allegation.

**B.     GHC's Argument Was Untimely and Commerce Should Have Declined to Amend the Final Results**

Defendant next asserts that Petitioners are wrong that GHC's argument was raised in an untimely fashion as a ministerial error allegation. See Def. Br. at 58. Defendant argues, based on its assumption that the claimed error is ministerial, Commerce has the discretion to correct ministerial errors as late as in the course of judicial review, and properly exercised that discretion in the Amended Final Results. See id.

Here, Commerce applied *identical* programming language in the Preliminary Results and Final Results, and GHC was silent on the claimed error until after the Final Results. Defendant's brief ignores the fact that GHC explicitly raised arguments in its administrative case brief regarding Commerce's preliminary treatment of consumption of both lump coal and bituminous coal, and the corresponding programming language. See Consol. Pls.' 56.2 Br. at 17-18. GHC's administrative case brief argued the Preliminary Results contained the following ministerial error:

> Commerce's second ministerial error was the double counting of "LUMPCOAL" cost. GHC used **[**
>
> **]** GHC included "Lump Coal with HTS number 270119" in raw material category in the 12/20 GHC SV Submission only for the purpose of keeping the HTS 270119 as an alternative choice for raw material bituminous coal SV input. However, as shown below, Commerce incorrectly included

"LUMPCOAL" in the calculation of direct material input cost while also including "LUMPCOAL" with the energy material input cost, leading to a double account of lump coal cost.

See Case Brief of Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. at 8 (June 12, 2024) (CR 223, PR 231).  In support of this argument, GHC cited Commerce's margin preliminary program language showing    [

] Id. (emphasis in original).  GHC's case brief also referenced Commerce's preliminary surrogate value for bituminous coal in several instances when addressing Commerce's reliance on Malaysia as the primary surrogate country.  See id. at 3, 13, 17-18.  Yet, despite raising these other calculation and programming issues pertaining to lump coal and bituminous coal, GHC was silent on Commerce's preliminarily valuation of its bituminous coal consumption based on Malaysian surrogate information concerning the value for lump coal (i.e., merchandise classified under HTS subheading 2701.19).

Defendant claims that Petitioners confuse the issue and rely on inapposite case law because Commerce retains the discretion to correct a ministerial error at any time, including during the course of judicial review.  See Def. Br. at 58 (citing Dorbest Ltd. v. United States, 604 F.3d 1363, 1376 (Fed. Cir. 2010)).  Although Defendant recites the language in Dorbest that Commerce has

6

NONCONFIDENTIAL

"authority to act to correct ministerial errors in the course of judicial review of the final results of its determinations," in Dorbest the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") nevertheless upheld Commerce's decision not to implement an alleged ministerial error that the respondent party failed to raise until well after the final results when the agency was conducting a remand proceeding. See Dorbest, 604 F.3d at 1377.

Here, Commerce not only applied the same programming language in both the Preliminary Results and the Final Results with respect to this issue, but GHC raised several arguments regarding the programming language for the valuation of lump coal and bituminous coal and failed to argue that the surrogate value for bituminous coal consumption should be modified. For this reason, the Federal Circuit's decision in QVD Food, which Defendant does not address in its response, is instructive. See Consol. Pls.' 56.2 Br. at 13-15 (discussing QVD Food Co., Ltd. v. United States, 658 F.3d 1318, 1328 (Fed. Cir. 2011)). In QVD Food, the Federal Circuit upheld Commerce's decision not to modify its surrogate financial ratio calculation after the final results when the same calculations had been used in both the preliminary and final results and the respondent failed to raise the relevant issue in its case brief. See id. ("In its case brief following the preliminary results, QVD alleged certain ministerial errors, but it failed to allege any error concerning financial ratios."). The similar facts presented here with respect to GHC should have resulted in the same agency approach of not modifying the final results in response to an untimely allegation that should have been raised earlier in the administrative process. Commerce's approach here of holding GHC to a different standard is inconsistent with QVD Food.

Finally, Defendant's silence on Petitioners' argument (see Consol. Pls.' 56.2 Br. at 13-15 at 12-16) that if this issue is deemed methodological in nature GHC failed to exhaust its administrative remedies in accordance with both the agency's regulations (19 C.F.R. §

NONCONFIDENTIAL

351.309(c)(2)) and the doctrine of administrative exhaustion (28 U.S.C. § 2637(d)) indicates that, should the Court agree the issue is methodological, Defendant does not dispute that remand is necessary because GHC did not raise the argument in a timely manner.

## CONCLUSION

For the reasons presented in this reply brief, as well as those presented in Consolidated Plaintiffs' opening brief, the Court should find that the Amended Final Results with respect to the calculation of bituminous coal consumption is not supported by substantial evidence and should remand that matter to the agency for further action.

Respectfully submitted,

/s/ Melissa M. Brewer
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER

Counsel to Calgon Carbon Corporation and
Norit Americas, Inc.

Dated:  April 24, 2026

8

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for Defendant-Intervenors Calgon Carbon Corporation and Norit Americas, Inc. certify that the attached Reply Brief contains 2,135 words, including footnotes, tables and charts. The word count certification is made in reliance on the word count feature contained in Microsoft 365 – Enterprise.

Respectfully submitted,

/s/ Melissa M. Brewer
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342 8400

Counsel to Calgon Carbon Corporation and Norit Americas, Inc.

Dated:  April 24, 2026